UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ZELIS REPRICING ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>All Actions | **Oral Argument Request**<br><br>Lead Action Case No.: 1:25-cv-10734-BEM<br><br>*Consolidated with Case Nos.:*<br>*1:25-CV-11092-BEM*<br>*1:25-CV-11167-BEM*<br>*1:25-CV-11537-BEM*<br><br>Leave to file granted on July 31, 2025 |

**MEMORANDUM IN SUPPORT OF DEFENDANT HUMANA INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED AND CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs do not plausibly allege that Defendants conspired to use Zelis's repricing tools to fix out-of-network payments. The joint motion explains that the Complaint is nothing more than a grab bag of accusations, most of which have no connection to the relevant Zelis repricing tools, let alone a conspiracy among Defendants to use them. But there are other reasons that the Complaint is particularly deficient as to Humana and should be dismissed under Rule 12(b)(6) with prejudice.

In the few allegations against Humana specifically, Plaintiffs concede that Humana stopped offering the commercial health insurance products at issue in this case. Compl. ¶ 37. That admission on its own is fatal to Plaintiffs' claim that Humana conspired because it is not plausible that Humana entered a conspiracy involving a product it was exiting. The rest of the Complaint is no more plausible: It consists of irrelevant allegations and improper group pleading that fails to explain what Humana did to join the conspiracy. *Redondo Waste Systems, Inc. v. Lopez-Freytes*, 659 F.3d 136, 140 (1st Cir. 2011) (plaintiff "must allege facts linking each defendant to the grounds on which that particular defendant is potentially liable."). The Complaint should be dismissed.

## FACTUAL BACKGROUND[1]

Humana's health insurance segment primarily focuses on Medicare Advantage ("MA") plans. Kay Decl., Ex. 1, Humana, 2024 Annual Report at 6-7 (reporting that MA plans make up 85% of insurance segment revenue) (cited in Compl. ¶ 37 n.26).[2] MA plans are government-approved plans offered by health insurers to provide a comprehensive array of health insurance benefits to Medicare-eligible individuals. *Id*. Medicare payment rates are set by Centers for Medicare & Medicaid Services, Compl. ¶ 193, and thus repricing tools are not relevant to Medicare.

Plaintiffs assert that Humana joined a conspiracy among *commercial* payors to delegate

---

[1] Humana accepts well-pled factual allegations as true solely for the purpose of this motion.
[2] The Court can take judicial notice of the report because it is incorporated into the Complaint. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33-34 (1st Cir. 2001).

repricing for *commercial* health insurance plans to Zelis repricing tools. Compl. ¶¶ 2, 8 (alleging "commercial health insurance payers" are conspiring to decrease PPO repricing). Several years ago, Humana made the strategic business decision to emphasize MA and other governmental health programs over the commercial health insurance plans that are the Complaint's sole focus. Humana announced in early 2023 that it would exit from commercial health insurance. Kay Decl., Ex. 1 at 15 (exit announcement on February 23, 2023). Humana's revenue from commercial health insurance plans was less than a percentage point of its insurance segment revenue last year. *Id.* at 6. Humana fully exited commercial health insurance plans by the end of 2024. Compl. ¶ 37.

## **LEGAL STANDARD**

Under Rule 12(b)(6), a plaintiff must plead specific facts to "state a claim…that is plausible on its face," not merely possible. *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). In an antitrust case, that requires "enough factual matter (taken as true) to suggest that an agreement was made." *Id*. at 556. "Parallel conduct and a bare assertion of conspiracy will not suffice." *Id*. Instead, "a complaint must at least allege the general contours of when an agreement was made, supporting those allegations with a context that tends to make said agreement plausible." *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 46 (1st Cir. 2013).

In addition, group pleading lumping together different defendants does not state a plausible claim. A plaintiff "must allege facts linking each defendant to the grounds on which that particular defendant is potentially liable." *Redondo Waste*, 659 F.3d at 140; *SD3 v. Black & Decker (U.S.)*, 801 F.3d 412, 422 (4th Cir. 2015) (complaint must "allege particular facts against a particular defendant" that "specify how these defendants [were] involved in the alleged conspiracy, without relying on indeterminate assertions against all defendants"). If a plaintiff "fails to allege particular facts against a particular defendant, then the defendant must be dismissed." *SD3*, 801 F.3d at 422.

**ARGUMENT**

Plaintiffs do not state a plausible claim that Humana joined a conspiracy among commercial payors to delegate repricing to Zelis. Plaintiffs plead neither the "general contours of when [this purported] agreement was made," nor "supporting…allegations with a context that tends to make said agreement plausible." *Evergreen*, 720 F.3d at 46.

One of the exceedingly few facts pled about Humana specifically is that it stopped selling the commercial health insurance products at issue in this case in 2024. Compl. ¶ 37; Kay Decl., Ex. 1 at 15. That allegation alone undermines Plaintiffs' core claims. For example, Plaintiffs assert that using Zelis's repricing tools is against the self-interest of all commercial payors because Zelis's repricing tools would lead to their "destruction" absent a conspiracy when customers left for more generous payors. Compl. ¶ 290. But this argument clearly cannot apply to Humana after it made the decision to exit. Plaintiffs do not plead when Humana joined the conspiracy, and Plaintiffs attempt to obscure important differences with impermissible group pleading. *Redondo Waste*, 659 F.3d at 140 (complaint must allege "facts linking each defendant" to liability). The Court need not blind itself to these differences. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (a court can "draw on its judicial experience and common sense" in assessing plausibility).

Plaintiffs' failure to allege when Humana purportedly joined a conspiracy to delegate repricing to Zelis further compounds the pleading defects and should result in dismissal. *Advanced Tech. Corp., Inc. v. Instron, Inc.*, 925 F.Supp.2d 170, 181 (D. Mass. 2013) (dismissing complaint that "fails to allege any particular conspiratorial meeting between Defendants"); *Dai v. SAS Inst. Inc.*, 2025 WL 2078835, at *3 (N.D. Cal. 2025) (dismissing complaint where plaintiffs failed to "include facts about when any of the named Hotel Defendants began to 'outsource' their pricing decisions"); *Gibson v. Cendyn Grp., LLC*, 2024 WL 2060260, at *4 (D. Nev. 2024) (allegations

3

defendants licensed software over "10 years merely suggest…Defendants had a 'similar reaction to similar pressures within an interdependent market, or conscious parallelism'").

Nothing else in the Complaint provides any "context" that would make it plausible there was a "preceding agreement" to delegate pricing to Zelis rather than "merely parallel conduct that could just as well be independent action" to use the software. *Twombly*, 550 U.S. at 557; *Cornish-Adebiyi v. Caesars Enter.*, 2024 WL 4356188, at *5 (D.N.J. 2024) (dismissing complaint because "mere use of the specific [pricing] software" by defendants not "suggestive of conspiracy"). Plaintiffs do not even identify which of the two Zelis repricing tools Humana used. Compl. ¶ 14 (referencing Zelis ERS and RBP). This is another reason the Complaint fails as to Humana. *Gibson v. MGM Resorts*, 2023 WL 7025996, at *3 (D. Nev. 2023) (dismissing complaint that "lacks allegations about which pricing algorithms each [defendant] uses").

Plaintiffs also acknowledge many reasons a defendant would choose to use Zelis's repricing tools *regardless* of what others were doing: Zelis advertises that its software helps with "managing complex data, improving efficiency, and ensuring compliance" and that it allows users to "automate processes," "enhance security," "optimize workflows," "reduce costs," and process repricing claims in under a second. Compl. ¶ 215. These are independent reasons to use Zelis that make the claims even less plausible. *Twombly*, 550 U.S. at 566 ("[T]here is no reason to infer that the companies had agreed among themselves to do what was only natural anyway."); *Cellustar Corp. v. Spring Solutions, Inc.*, 2021 WL 666867, at *3 (D.P.R. 2021) (entering advantageous vendor agreement "indicates an independent business decision," not conspiracy).

Across 166 pages, Plaintiffs include only *three* allegations that are specific to Humana other than its exit from commercial health insurance. These allegations do not support the claims.

**Trade Association Membership.** Plaintiffs allege that Humana is a member of a trade

4

association called AHIP. Compl. ¶ 288. Plaintiffs speculate that AHIP may be relevant, but cite no facts to support that speculation. *Id*. But mere membership in a trade association does not support the existence of a conspiracy. *Twombly*, 550 U.S. at 567 n.12 ("belong[ing] to the same trade guild as one['s]...competitors" does not render conspiracy plausible); *In re Concrete and Cement Additives Antitrust Litig.*, 2025 WL 1755193, at *18 (S.D.N.Y. 2025) (collecting cases).

**Former Humana Employees.** Plaintiffs allege without further explanation that two employees of Zelis used to work at Humana. Compl. ¶ 82. This does not make a conspiracy plausible. *Credit Bureau Servs., Inc. v. Experian Info. Sols., Inc.*, 2013 WL 3337676, at *8 (C.D. Cal. 2013) (dismissing Section 1 complaint that "merely names executives" that changed jobs).

**Ownership of Availity.** Plaintiffs allege Humana owns shares in Availity, which had a "strategic alliance" with Zelis beginning in 2024. Plaintiffs again ignore that Humana was exiting commercial health insurance when Availity and Zelis formed the alliance, conflate Humana with Availity, and mischaracterize Availity, which is an online platform that can facilitate interactions between a payor and provider. The press release cited by Plaintiffs explains Availity's partnership with Zelis was "to streamline the end-to-end process between healthcare payers and providers," for example, by solving the frustration of having to "log into multiple systems to find their claims and related payment and remittance data." Kay Decl., Ex. 2. Plaintiffs' assertion Availity "could not be more anticompetitive" is implausible and directly contradicted by the press release. *Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014) ("the exhibit trumps the allegations").

Plaintiffs allege four facts specifically about Humana, but none plausibly alleges that Humana conspired. Three of those facts are untethered to the alleged conspiracy and are irrelevant. The fourth, that Humana has exited commercial health insurance, undermines Plaintiffs' claims. Humana respectfully requests the Complaint be dismissed with prejudice.

5

Dated: August 11, 2025

                                          Respectfully submitted,

                                          _/s/ Joseph M. Kay_

                                          Joseph M. Kay  
                                          Abena Mainoo, Bar No. 677622  
                                          CLEARY GOTTLIEB STEEN & HAMILTON LLP  
                                          One Liberty Plaza  
                                          New York, NY 10006  
                                          Telephone: 212.225.2000  
                                          jkay@cgsh.com  
                                          amainoo@cgsh.com

                                          Daniel P. Culley  
                                          CLEARY GOTTLIEB STEEN & HAMILTON LLP  
                                          2112 Pennsylvania Avenue, NW  
                                          Washington, DC 20037  
                                          Telephone: 202.974.1500  
                                          dculley@cgsh.com

                                          Heather Nyong'o  
                                          CLEARY GOTTLIEB STEEN & HAMILTON LLP  
                                          650 California St # 2400  
                                          San Francisco, CA 94108  
                                          Telephone: 415.796.4480  
                                          hnyongo@cgsh.com

                                          *Counsel for Defendant Humana Inc.*

## LOCAL RULE 7.1 CERTIFICATE

Pursuant to Local Rule 7.1(a)(2), the undersigned counsel certifies that counsel for Defendants have conferred with counsel for Plaintiffs and have attempted in good faith to resolve or narrow the issues in this Motion but have been unable to do so.

_____
Joseph M. Kay