**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: ZELIS REPRICING ANTITRUST LITIGATION | Lead Action Case No.: 1:25-cv-10734-BEM |
| | *Consolidated with Case Nos.:*<br>*1:25-CV-11092-BEM*<br>*1:25-CV-11167-BEM* |
| This Document Relates To: | *1:25-CV-11537-BEM* |
| All Associated Cases | <u>DEMAND FOR JURY TRIAL</u> |

**PLAINTIFFS' OPPOSITION TO DEFENDANT HUMANA'S**
**MOTION TO DISMISS THE AMENDED AND**
**<u>CONSOLIDATED CLASS ACTION COMPLAINT</u>**

**I.      Humana Was a Commercial Payer During the Class Period and Has Not Withdrawn from Its Years-Long Participation in the Conspiracy**

In its separate Motion to Dismiss, Humana makes only one argument unique to Humana, and it fails.[1] Contrary to the factual allegations in the Complaint, Humana tries to diminish its involvement in the commercial insurance market, claiming that its health insurance segment "primarily focuses on Medicare Advantage ("MA") plans." ECF No. 99 ("Humana's Br.") at 1. And, ignoring the Class Period, Humana claims that it "fully exited commercial health insurance plans by the end of 2024." Humana's Br. at 2. Humana's 2024 annual report cited by Humana, though, belies these claims. There, Humana admits it continues to sell commercial healthcare insurance to this day:

> We sell specialty and ancillary insurance benefits consisting of dental, vision, life and disability to employer groups. In addition, we sell dental and vision specialty insurance benefits to individuals….
>
> Other than employer group insurance, Humana offers "…specialty health insurance benefits marketed to individuals and employer groups, including dental, vision, and other supplemental health benefits, as well as administrative services only, or ASO. In addition, our Insurance segment includes our Military services business, primarily our T-2017 East Region contract, as well as the operations of our PBM Business."[2]

---

[1] Defendants requested and obtained leave to file a single joint memorandum of law not to exceed forty (40) pages in support of their joint motion to dismiss the Amended and Consolidated Complaint. To the extent that any defendant filed a separate motion to dismiss on *issues specific to its circumstances*, the Parties agreed that each such defendant may file a separate memoranda of law on *such individual issues*, each not to exceed five (5) pages. Other than the false claim that it recently stopped selling commercial insurance, Humana has also raised issues argued in the Omnibus Motion to Dismiss. ECF. No. 99. Plaintiffs object to Humana's attempt to circumvent the agreement and take two bites out of the briefing apple. To remain within the 5-page limit, Plaintiffs incorporate the facts and arguments submitted in their Memorandum In Opposition to Defendants' Omnibus Memorandum filed in support of their Motion to Dismiss.

[2] Kay Decl. Ex. 1, to Humana's Br. at pp. 9, 4.

And despite claiming the opposite, at least until the first half of 2025, Humana had not exited from selling "Employer Group" commercial healthcare products and represented that it continues to sell all of its other health plan offerings:

> In February 2023, we announced our planned exit from the Employer Group Commercial Medical Products business, which includes all fully insured, self-funded and Federal Employee Health Benefit medical plans, as well as associated wellness and rewards programs*. No other Humana health plan offerings are materially affected. … We anticipate the exit of this line of business to be finalized in the first half of 2025. (Emphasis added.)*[3]

While Humana planned to discontinue selling some health insurance plans at some time in 2025 (and not by the end of 2024 as Humana claims in its motion), Humana continues to sell relevant medical insurance products.Humana has been a commercial health insurer during the Class Period and continues to provide such insurance. ECF No. 39 ("CAC"), at ¶¶ 37, 39, 235, 239, 288. There is simply no basis to dismiss Humana given such an important disputed fact issue. Even if Humana had stopped selling some of its commercial health insurance at some point during the Class Period, this does not negate its liability for the  earlier portion of the Class Period it sold commercial health insurance. And, subsequent withdrawal from the market does not equate to a withdrawal from the conspiracy"In order to withdraw, a conspirator must act affirmatively either to defeat or disavow the purposes of the conspiracy." U.S. v Ciresi, 697 F.3d 19, 27 (1st Cir. 2012)[4] Moreover, even upon withdrawal, Humana would liable for its previous agreement and for its own

---

[3] Kay Decl. Ex. 1, to Humana's Br. at p.4.

[4] Citing *United States v. Juodakis,* 834 F.2d 1099, 1102 (1st Cir.1987) (per curiam); *see also United States v. Pizarro–Berríos,* 448 F.3d 1, 10 (1st Cir.2006). and further stating, "Typically, that requires either ... a full confession to authorities or a communication by the accused to his co-conspirators that he has abandoned the enterprise and its goals." *United States v. Piper,* 298 F.3d 47, 53 (1st Cir.2002) (quoting *Juodakis,* 834 F.2d at 1102) (internal quotation marks omitted). Moreover, the "[m]ere cessation of activity in furtherance of the conspiracy does not constitute withdrawal." *Juodakis,* 834 F.2d at 1102 (quoting *United States v. Dunn,* 758 F.2d 30, 37 (1st Cir.1985)) (internal quotation marks omitted). This standard is "strict" and not easily met. *Id.*

and its co-conspirators' previous acts in furtherance of the conspiracy. <u>United States v. Kushner</u>, <u>305 F.3d 194, 198 (3d Cir. 2002</u>). Withdrawal is an affirmative defense, which the defendant has the burden of proving by a preponderance of the evidence in order to overcome the presumption of its continued participation in the conspiracy. See *United States v. Leoner-Aguirre*, 939 F.3d 310, 318 (1st Cir. 2019),(citing, *inter alia*, <u>Smith v. U.S., 568 U.S. 106, 112 (2013)</u>). Whether there is an effective withdrawal from a conspiracy is "typically a question of fact for the jury".*Osborn v. Visa Inc*., 797 F.3d 1057, 1068 (D.C. Cir. 2015) (citing *United States v. Bafia,* 949 F.2d 1465, 1480 (7th Cir.1991); *In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. C–07–5944, 2014 WL 1091589, at *9 (N.D.Cal. Mar. 13, 2014) (noting that withdrawal generally "is a fact-sensitive affirmative defense").

Any claim of an exit from the conspiracy is also contradicted by Humana's relationship with Availity and Zelis. The Complaint alleges that Humana has a financial interest in Availity, which is an unnamed co-conspirator partner of  Zelis. In March 2024, Zelis entered into a "strategic alliance" with Availity, the nation's largest real-time health information network, "to streamline the end-to-end process between Commercial Payers and providers, from administrative workflows through payments…." CAC at ¶¶ 8, 15, 232-33. Availity works in partnership with Defendants Aetna, Cigna, Humana, United Healthcare, and others. CAC at ¶235. Availity was founded by Humana and Blue Cross Blue Shield of Florida and remains a significant shareholder in and part of Availity's investor base. Humana is actively involved in the operations of Availity along with Blue Cross, UNH and HCSC to date, which includes confidential information sharing and presumably profit sharing with Zelis and Availity. CAC at ¶¶ 234-35. This co-conspirator ownership in the Availity/Zelis relationship facilitates supervision of Zelis and of the conduct of the conspiracy. Such joint supervision also deters cheating and secret price discounts.

## II. The Complaint Alleges Plausible and Sufficient Facts as to Humana's Participation in the Conspiracy

Humana also repeats the arguments of Defendants' omnibus motion to dismiss to argue the conspiracy is not plausible and lacks supporting evidence. Plaintiffs address these arguments globally in response to that motion, but the CAC gives lengthy and detailed notice to Humana of its participation in the Zelis conspiracy. Humana is a commercial insurance payor that agreed with its co-Defendants to use Zelis's pricing algorithm and to share confidential claims data to suppress OON payments to Providers. CAC at ¶¶ 296, 298, 60. As of 2024, Humana was one of the top 5 national health plans listed by Zelis as using its platform. *Id.* at ¶¶ 111, 238-39, 242. Humana agreed to delegate its price-setting authority to Zelis as a repricer. *Id*. at ¶¶ 363, 366. Humana incorporated Zelis' downward repricing into its OON payments. *Id*. at ¶¶ 333, 358.

Humana argues that Plaintiffs do not identify which of two Zelis repricing tools Humana used. CAC at ¶14 (referencing Zelis ERS and RBP). This argument also repeats Defendants' omnibus motion to dismiss and Plaintiffs address the argument there.

Humana argues that the fact that two of Zelis's key high-level executives previously held leadership roles at Humana does not make a conspiracy plausible. To the contrary, the allegations enhances the likelihood of a conspiracy because it creates an inference of inter-Defendant knowledge of prices and pricing strategies and the lack of independence of Zelis. In other words, core Defendant Commercial Payer co-conspirators were able to exchange with each other and Zelis their confidential claims payments pricing practices.

In *Kraft Foods Global, Inc. v. United Egg Producer, Inc*., 2023 WL 6065308, *12 (N.D. Ill. Sept. 8, 2023), the co-conspirators received updates on the conspiracy's success and participation from their trade association, and also actively participated in the trade association's business by placing their executives in positions on the trade association's board and committees. There,

the co-conspirators brushed shoulders, and cross-pollinated ideas. Similar to here, they sat on committees that ultimately developed, approved, and executed the conspiracy's price-fixing initiatives.

The Complaint alleges that Humana is a member of the health insurance company trade association AHIP. AHIP brings together member companies and facilitates dialogue to advocate on shared interests, including minimizing OON payments to Providers. Numerous executives of Commercial Payers hold positions on AHIP's Board of Directors, including the CEOs of Elevance, Cigna, and HCSC. CAC ¶82. Consequently, Plaintiffs have alleged sufficient facts to deny Humana's (and the other Defendants') Motion to Dismiss.

Dated: September 22, 2025

|  | /s/*Maureen Forsyth* |
|---|---|
| Richard M. Paul III, *pro hac vice* | Maureen Forsyth, (MA Bar No. 642390) |
| Mary Jane Fait, *pro hac vice* | Jason S. Hartley, *pro hac vice* |
| Haley Hawn, *pro hac vice* | Jason M. Lindner, *pro hac vice forthcoming* |
| **PAUL LLP** | Kenneth Frost, *pro hac vice forthcoming* |
| 600 Broadway Boulevard, Suite 600 | **HARTLEY LLP** |
| Kansas City, Missouri 64105 | 101 W. Broadway, Ste 820 |
| Telephone: (816) 984-8100 | San Diego, CA 92101 |
| Rick@PaulLLP.com | Telephone: (619) 400-5822 |
| MaryJane@PaulLLP.com | hartley@hartleyllp.com |
| Haley@PaulLLP.com | lindner@hartleyllp.com |

### Co-Lead Counsel for Plaintiffs and the Putative Class

| Amanda F. Lawrence | Daniel E. Gustafson |
|---|---|
| **SCOTT+SCOTT ATTORNEYS AT LAW LLP** | Daniel C. Hedlund |
| 156 South Main Street | Michelle J. Looby |
| P.O. Box 192 | Joe E. Nelson |
| Colchester, CT 06415 | **GUSTAFSON GLUEK PLLC** |
| Telephone: (860) 531-2606 | 120 South Sixth Street, Suite 2600 |
| alawrence@scott-scott.com | Minneapolis, MN 55402 |
|  | Telephone: (612) 333-8844 |
|  | dgustafson@gustafsongluek.com |
|  | dhedlund@gustafsongluek.com |
|  | mlooby@gustafsongluek.com |
|  | jnelson@gustafsongluek.com |

Patrick Coughlin, *pro hac forthcoming*
Fatima Brizuela, *pro hac forthcoming*
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 798-5308
pcoughlin@scott-scott.com
fbrizuela@scott-scott.com

John Landay (*pro hac vice forthcoming*)
**LANDAY ROBERTS LLP**
600 West Broadway, Suite 700
San Diego, California 92101
Telephone: (619) 648-4811
jlanday@landayroberts.com

Daniel J. Mogin (*pro hac vice forthcoming*)
MOGIN LAW LLP
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone: (619) 687-6611
dmogin@moginlawllp.com

Daniel R. Karon (*pro hac vice forthcoming*)
KARON LLC
631 W. St. Clair Ave.
Cleveland, OH 44113
Telephone: (216) 622-1851
dkaron@karonllc.com

Katrina Carroll
Kyle A. Shamberg
**CARROLL SHAMBERG LLC**
111 W. Washington Street
Suite 1240
Chicago, IL 60602
Telephone: 872-215-6205
katrina@csclassactions.com
kyle@csclassactions.com

Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
Christian S. Ruano (352012)
**COTCHETT, PITRE**
**& McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

David M. Cialkowski (*pro hac vice
    forthcoming*)
Ian F. McFarland (*pro hac vice forthcoming*)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 S. 8th St.
Minneapolis, MN 55402
(612) 341-0400
david.cialkowski@zimmreed.com
ian.mcfarland@zimmreed.com

Garrett D. Blanchfield
Brant D. Penney
Roberta A. Yard
**REINHARDT WENDORF &**
**BLANCHFIELD**
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Telephone: (651) 287-2100
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com
r.yard@rwblawfirm.com

6

## CERTIFICATE OF SERVICE

I certify that on September 22, 2025, I caused a true and correct copy of the foregoing Opposition to Defendant Humana's Motion to Dismiss the Consolidated Amended Complaint, to be filed with the Clerk of Court using the CM/ECF system which will serve as notification of such filing to the email address of all counsel of record in this action.

*/s/ Maureen Forsyth*
Maureen Forsyth

7