**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE:  ZELIS REPRICING ANTITRUST LITIGATION<br><br><br>This Document Relates To:<br><br>**_All Associated Cases_** | Lead Action Case No.: 1:25-cv-10734-BEM<br><br>_Consolidated with Case Nos.:_<br><br>_1:25-CV-11092-BEM_<br>_1:25-CV-11167-BEM_<br>_1:25-CV-11537-BEM_ |

## JOINT STATUS REPORT AND PROPOSED AGENDA

In accordance with the Court's Order (Dkt. 252), Counsel for the parties respectfully submit this Joint Status Report and Proposed Agenda in advance of the August 14, 2026 Status Conference before Judge Murphy and Case Management Conference before Magistrate Judge Boal.

**I.     PROPOSED AGENDA**

   A.   Structured data field disclosures;

   B.   Number of depositions;

   C.   Deadline for the substantial completion of document discovery;

   D.   Process for negotiating search terms; and

   E.   Discovery disputes regarding Plaintiffs' responses to Defendants' RFPs.

**II.    JOINT STATUS REPORT**

   **A.  Structured Data Field Disclosures**

Plaintiffs' Statement: Defendants' assertion that Plaintiffs should issue requests for Defendants' structured data before the parties have resolved the scope of structured data fields to be produced in the structured data itself is a transparent attempt to disrupt Plaintiffs' ability to issue

informed requests. Plaintiffs requested, and this Court entered, a Scheduling Order calling for a preliminary disclosure of "data fields, along with their respective location, meaning, relationship and other data that can assist in determining their significance or pertinence." Dkt. 222 at 1. The purpose of this process is to assist the receiving party in determining what data fields are significant to the case, and should thus be requested in discovery. It is nonsensical and highly prejudicial for Defendants to insist that Plaintiffs are delaying structured data discovery process because Plaintiffs—who are outsiders to Defendants' organizations and structured data—are analyzing Defendants' structured data disclosures before issuing further requests.

To date, Plaintiffs have largely resolved discussions regarding the scope of data fields through the meet and confer process, reserving their rights. On July 27, 2026, after reviewing Defendants' initial structured data disclosures, Plaintiffs issued correspondence to Aetna, Cigna, Elevance, United, and the Zelis Defendants requesting clarification and additional information regarding data fields, custodial and non-custodial sources, and data dictionaries. Plaintiffs issued the same request to Humana on July 28, 2026.

While Plaintiffs' position has been that all data fields should be disclosed to inform the Receiving Party sufficiently to "determine their significance" and decide what to request with specificity, Plaintiffs have accepted the responses provided by Aetna, Cigna, Zelis, Humana, and Elevance, reserving all rights to request additional information regarding data fields should it appear that relevant claims data was not produced upon reviewing their actual productions. Having received this additional information, Plaintiffs will issue requests to those Defendants for the structured data.

Having reviewed United's response, Plaintiffs believe additional information and clarification are needed and are thus not in a position to accept the response as sufficient and issue

corresponding requests. Plaintiffs anticipate that the issues should be resolved promptly upon further discussions between the parties. Once a satisfactory answer is received, Plaintiffs will promptly serve data discovery on United as well.

Defendants' Statement: Defendants seek the Court's assistance in addressing Plaintiffs' delay in issuing requests for production describing the full set of structured data they seek. Their delay in doing so risks compromising the parties' ability to comply with the October 1, 2026 deadline to complete structured data productions.

On May 26, 2026, Plaintiffs served their first sets of requests for production. These sets did not include any request for the full scope of structured data sought by Plaintiffs; instead, they sought only "samples" of structured data. Shortly thereafter, on June 5, Defendants flagged this omission and urged Plaintiffs to serve their complete structured data production requests promptly, so that Defendants could undertake the time- and resource-intensive work of large-scale data collection on a timeline compatible with the Court's schedule. In response, Plaintiffs declined to serve such requests; instead, they said that they required additional information in order "to make the most efficient, sensible and focused" data request. In subsequent correspondence, and in the parties' July 6 Joint Status Report (Dkt. 247), Plaintiffs took the position that they required Defendants to disclose *all* data fields that exist within the platforms and databases relevant to this litigation, insisting that they could not formulate a substantive data request without that information.

On or before July 6, in accordance with the Court's Scheduling Order (Dkt. 222), Defendants disclosed their respective data fields and provided Plaintiffs with explanatory materials such as data samples and/or data dictionaries, as applicable. Plaintiffs followed up with certain requests for additional information from Defendants, which all Defendants have addressed. In this

3

Joint Status Report, Plaintiffs now confirm that they have "accepted the data field disclosures of Aetna, Cigna, Humana, and Zelis." And as to Elevance and United, Plaintiffs have not identified any particular field or information that is missing from those Defendants' data field disclosures, and those Defendants are not aware of any disputes regarding the scope of their data disclosures.

More than two months have passed since Defendants first highlighted the lack of a full structured data request from Plaintiffs, and there is now less than eight weeks until the October 1 structured data production deadline. Yet Defendants still do not know the full scope of structured data that Plaintiffs seek or whether it remains feasible to comply with the current deadline. And while Plaintiffs represent that they "intend to serve data discovery requests" for certain Defendants, they have not agreed to do so by any specified date. To the extent that Plaintiffs have not issued requests for production of structured data to all Defendants by the August 14 Status Conference, Defendants respectfully request that the Court order Plaintiffs to issue such requests no later than August 18 so that the parties can promptly begin discussing those requests, if necessary.

## B. Number of Depositions

Plaintiffs' Statement: Five Defendants have been added to this action through the Second Amended Consolidated Class Action Complaint ("Compl."), which Plaintiffs were granted leave to file and did file on August 3, 2026. Dkts. 272-273. Those Defendants are:

- Meritain Health, Inc. (subsidiary of defendant Aetna, Inc.);

- Cigna Health and Life Insurance Company (subsidiary of defendant The Cigna Group);

- HealthSCOPE Benefits, Inc. (subsidiary of UnitedHealth);

- UMR, Inc. (same), and;

- Blue Cross of California (subsidiary of defendant Elevance).

4

Considering these additions, the number of Defendants went from eight to thirteen (13) in this matter—all of which are healthcare entities that operate nationwide.[1] The Deposition Protocol (Dkt. 263), entered before Plaintiffs were granted leave to add the five new defendants and over Plaintiffs' objections, permits Plaintiffs to take only twenty (20) depositions of the Defendants as a group and no more than five (5) depositions of any one Defendant. *Id*. at ¶ I.A.1.

In Plaintiffs' experience litigating dozens of antitrust class actions over several decades, a limit of only 20 depositions of thirteen (13) defendants is unmanageable and highly prejudicial to Plaintiffs' ability to discover admissible evidence for use on summary judgment and at trial. As the initial disclosures served by certain Defendants show, each Defendant or Defendant group has a hierarchical structure with pertinent witnesses at several levels. Although it is too early to know how many depositions Plaintiffs will need to take of each Defendant or Defendant group, Plaintiffs know enough now to know that a 20-deposition cap is unreasonable given the complexity of the antitrust claims and Defendants' nationwide businesses in this case. At a minimum, Plaintiffs anticipate the need to depose certain employees of every Defendant about their communications with co-Defendants and pertinent third parties, interactions with healthcare providers, corporate structure, re-pricing activities, and reimbursement methodologies, among other topics. Some of these topics involve different witnesses with distinct knowledge and responsibilities. Based on Defendants' initial disclosures to date, these topics cannot be reasonably addressed in twenty depositions of the thirteen Defendants as a whole. Antitrust cases are also notoriously document intensive, and depositions will need to be taken of witnesses with knowledge of key documents to admit them and statements within them at trial.

---

[1] That the new Defendants are subsidiaries does not defeat that they are new Defendants in the case and warrant the need for additional depositions.

For these reasons, Plaintiffs respectfully request that the Court amend paragraph I.A.1. of the Deposition Protocol to permit Plaintiffs, absent leave of Court, up to sixty (60) depositions of the Defendants as a whole, and no more than ten (10) depositions of any particular Defendant or Defendant group.

Defendants' Statement: Two weeks after the Court resolved the Parties' dispute regarding the deposition protocol, Plaintiffs seek reconsideration of that decision by making the same arguments the Court already rejected.  Specifically, the Parties disputed the number of depositions of Defendants.  Plaintiffs argued there should be sixty (60) depositions of Defendants, with ten (10) depositions per "each corporate family."  Defendants argued there should be twenty (20), because Plaintiffs' proposal was (1) unworkable under the case schedule, (2) disproportionate to the number of custodians, (3) lacking any basis, (4) inconsistent with applicable case law, and (5) highly prejudicial to Defendants and the Court.  Dkt. 240 at 6–11.  The Court adopted Defendants' protocol (Dkt. 262) and entered it as an Order (Dkt. 263).

Plaintiffs seek reconsideration of that decision in a joint status report rather than by motion, without conferring with Defendants, and based on the same arguments that this Court considered and rejected.  In doing so, Plaintiffs still fail to address Defendants' five arguments, cite no case law, and fail to come even close to meeting their burden of showing a need to reconsider this issue. Tellingly, Plaintiffs have never disputed, across multiple filings, that their proposal is untenable under the current case schedule, and therefore concede the point.

Plaintiffs' improper request for reconsideration should be denied for multiple reasons:

**(1) The Amendment Provides No Basis for Reconsideration.**

Plaintiffs' only argument for revisiting the Court's Order is that their amended complaint added subsidiaries of existing Defendants.  The amended complaint changes nothing that bears on

6

the number of depositions.  There were previously, and remain, six "corporate families" (using Plaintiffs' terminology): (1) Zelis, (2) Aetna, (3) Cigna, (4) Elevance, (5) Humana, and (6) United. For instance, the original complaint named three separate Zelis entities, but Plaintiffs have always treated Zelis as a single "corporate family" for purposes of depositions.

United illustrates the point.  The original complaint named "UnitedHealth Group Inc."  As United has repeatedly explained to Plaintiffs, UnitedHealth Group "is an improper defendant, as it does not have any role in the operation of health plans or in the allegations set forth in the Complaint." *E.g.*, Dkt. 231 (June 8, 2026 Answer).  United's May 12 initial disclosures identified the entities that did:  "its indirect subsidiary, UMR, Inc., and previously, its subsidiary, HealthSCOPE Benefits, Inc." (together, UMR).  United's disclosures and custodians accordingly listed only employees of UMR.  Plaintiffs' amended complaint names those two subsidiaries as Defendants.  It does not add a witness, a custodian, or a document to this case; it attaches a corrected entity name to employees United disclosed nearly three months ago.

Plaintiffs' observation that the number of Defendants "went from eight to thirteen" is therefore irrelevant.  Plaintiffs asked this Court for "ten (10) depositions of *each corporate family*."  Dkt. 240 at 4 (emphasis added).  The Court rejected that argument.  The number of "corporate families" has not changed and reconsideration is not warranted.

**(2) Plaintiffs' Proposal Still Is Not Workable.**

Fact discovery closes on March 8, 2027 and all fact depositions "must be completed by" that date.  Dkt. 222.  Thus, Plaintiffs' protocol (which would result in 110 depositions total) is just as untenable now as it was when the Court rejected it—a fact they do not dispute.  *See* Dkt. 240.

**(3)  The Order Is Proportional to the Number of Custodians & Disclosed Witnesses.**

7

Defendants collectively disclosed twenty-six (26) witnesses in their initial disclosures. Plaintiffs' demand for sixty (60) depositions would more than *double* the number of disclosed witnesses. Plaintiffs do not address this point.

**(4) Plaintiffs Have Still Failed to State a Substantive Basis for Their Proposal.**

At end, Plaintiffs have not shown why they need 60 depositions of Defendants. They have not identified what unique, relevant information any witness is expected to provide. That "it is too early to know how many depositions Plaintiffs will need to take of each Defendant" is no answer; it is why, if more depositions are needed, Plaintiffs should make a specific showing at that time, rather than seeking a sweeping, unjustified redo now.

**(5) The Court's Order Is Consistent with Applicable Case Authority.**

Defendants' proposal, which the Court adopted, is consistent with the limits courts have approved in other antitrust matters, including the five cases previously cited by Plaintiffs. *See* Dkt. 240 at 10. Plaintiffs do not dispute this above or cite any contrary case law.

**(6) The Court's Order Does Not Prejudice Either Party.**

Defendants' proposal, which the Court adopted, does not prejudice either party, as both sides (each made up by multiple separate entities) have the same number of depositions. By contrast, Plaintiffs' proposal would prejudice Defendants, be unworkable under the current case schedule, and would lead to inefficient and unnecessary waste of resources.

*     *     *

The Court already considered and rejected Plaintiffs' argument. Plaintiffs offer no material change in facts or law that warrants reconsideration of the Court's correct decision. Their request for reconsideration should be rejected.

### C.  <u>**Substantial Completion of Document Production**</u>

<u>Plaintiffs' Statement</u>:  The current scheduling order (Dkt. 222) does not include a deadline for each party to inform the other parties that it has substantially completed its production of responsive documents. As past cases have shown, inclusion of such a deadline will help to ensure that discovery and depositions proceed efficiently and occur as soon as reasonably practicable given the volume of records relevant to each deponent. Some of those relevant records also may be withheld as privileged, and depositions may be delayed until after the Court resolves disputes concerning them. Simply put, a substantial completion deadline incentivizes the parties to produce responsive documents in a timely manner as ordered by the Court, or at least promptly explain the reasons for any delay in production to the Court. It also decreases the likelihood that the deadline for merits discovery will need to be extended for all parties, rather than only those parties who had difficulty for whatever reasons in satisfying their discovery obligations.

For these reasons, Plaintiffs request that the Scheduling Order be amended to set Monday, November 16, 2026, as the deadline for the substantial completion of document production by each party. This date is 112 days before the close of fact discovery on March 8, 2027.

<u>Defendants' Statement</u>: Defendants are amenable to a modification to the Scheduling Order to establish a deadline for the substantial completion of document productions, but setting such a deadline at this time is premature.  As discussed further in Section V below, the parties' search term negotiations are ongoing, and Defendants are unable to proceed with the bulk of their document review and productions until those negotiations conclude.  Defendants accordingly propose that the parties revisit this topic once the parties have agreed upon search terms, and include the topic in the joint status report for the September conference as necessary.

### D. Process for Negotiating Search Terms

Defendants' Statement: The Parties' sole remaining discovery dispute relating to custodial discovery of Defendants is search terms. Under the Parties' Stipulated ESI Protocol (Dkt. 265), each party proposes search terms for its own collection, and the other side then proposes "revisions and additions" thirty (30) days later. ESI Protocol § V.E.3(d). Thus, on July 1, each Defendant proposed search terms tailored to its own documents, custodians, and responses and objections to Plaintiffs' RFPs. Thirty days later, Plaintiffs responded *not* with revisions or additions to any Defendant's terms, but rather with a single set of 74 "Universal Strings" to be run against every Defendants' collection. The strings bear no relationship to the allegations in this case. For instance, one consists of the name and email address of every custodian in the case; another captures any document containing words like "email," "text," "talk," or "meet" with no subject matter limitation—which hits on nearly every document in each Defendant's collection. In the view of Defendants' vendors who ran the search terms, the terms are redundant, the "wildcard" terms are misused, and the terms are not what one would ordinarily see in this type of litigation. Defendants thus requested that Plaintiffs do what the ESI Protocol requires—send "revisions and additions" to Defendants' search terms. Plaintiffs refused. Defendants respectfully request that the Court order Plaintiffs to do so.

*        *        *

By way of background, and in order to meet the discovery deadlines in Judge Murphy's May 20, 2026 scheduling order (Dkt. 222), Defendants have been working expeditiously to collect and begin their review of custodial and noncustodial documents. Defendants disclosed their proposed document custodians and custodial sources on June 12, their noncustodial document and data sources on June 22, and their responses and objections to Plaintiffs' First Set of Requests for

Production ("RFPs")—including to Plaintiffs' proposed relevant time period—on June 25. Plaintiffs have raised no objections to Defendants' custodians, custodial or noncustodial sources, or their responses and objections to the RFPs. Accordingly, the sole outstanding dispute that requires resolution before Defendants can proceed with document review and production concerns search terms.

Plaintiffs provided initial proposed search terms for Defendants on June 17, and the parties met and conferred regarding those terms on June 22. Those terms were incredibly broad and, for those Defendants were able to test the proposed terms, the terms hit on a large percentage of each Defendant's document collections (for some Defendants, more than 95% of the entirety of their document collections). On July 1, after independently evaluating Plaintiffs' initial proposed search terms, their own document collections, and in accordance with their individual responses and objections to Plaintiffs' discovery requests, each Defendant sent Plaintiffs individualized revised search terms based on their particular circumstances. Under Section V.E.3(d) of the ESI Protocol, Plaintiffs were obligated to provide "any proposed revisions and additions" to each Defendant's proposed search terms. Instead, on July 31—30 days after each Defendant sent their revised, individualized search terms—Plaintiffs sent Defendants "Universal Strings" (which largely reverted to Plaintiffs' initial June 17 set of proposed search terms) to be applied to all Defendants without identifying any specific "proposed revisions and additions" to the terms each Defendant had proposed.

The "Universal Strings" that Plaintiffs improperly proposed include 74 terms, each of which is breathtakingly overbroad and not tailored to allegations in the case. For example, Plaintiffs have proposed a search string that includes the name or email of proposed document custodians in the case separated by an "OR". *See* Ex. A (terms 42, 54, 74). If run across all

11

Defendants' document collections, this would result in running a custodian's name and email across his or her own custodial file.  Other search strings seek any document that includes *any* of the words "email," "text," "speak," "talk," "attach!," "see!" "discuss!" "met!," OR "meet!" (among others), without any subject matter limitation.  *Id.* (terms 22, 24).   These are just examples—each of Plaintiffs proposed terms is overbroad and not tailored to seeking relevant documents.  *See generally id.*  Predictably, for those Defendants who have been able to test Plaintiffs' proposed search terms, this round of overbroad search terms hit on nearly every document in each Defendant's document collection.

Defendants have asked Plaintiffs to engage in good-faith search-term negotiations on a Defendant-by-Defendant basis, as the ESI Protocol requires.  *See* ESI Protocol, Section V.E.3(d) (As the requesting Parties, Plaintiffs "will provide any proposed revisions and additions *to the producing Party's search terms.*") (emphasis added).  Plaintiffs have refused, stating that "Plaintiffs have served nearly identical RFPs to each Defendant, further warranting the use of a set of global search terms."  But Plaintiffs fail to recognize that each Defendant served unique responses and objections to those RFPs—which Plaintiffs have not challenged—based on the unique circumstances of each Defendants' involvement in this case and their knowledge of their own documents.  A single, universal set of terms also ignores that Defendants may not all choose to employ the same document review methodology: certain Defendants may intend to use technology-assisted reviews ("TAR"), which may call for different approaches to search terms than the linear review other Defendants may undertake.  (Indeed, the Stipulated TAR Protocol (Dkt. 261) leaves it to each party's discretion whether to implement TAR or not.)  The "Universal Strings" likewise fail to account for the fact that Defendants use different e-discovery vendors and technological platforms, on which parameters such as stop words and search syntax vary.  Where

12

Defendants disclosed their platforms and lists of stop words to Plaintiffs, Plaintiffs nonetheless ignored those disclosures and proposed terms that hit on disclosed stop words and do not account for the differences among Defendants' platforms. Given the above the use of these "Universal Strings" is not in good faith, especially given the disclosures and discussions that have already taken place, without any movement by Plaintiffs.

Plaintiffs must promptly engage in good-faith negotiations with each Defendant so that the parties can meet the deadlines in Judge Murphy's scheduling order. Defendants thus respectfully request that the Court direct Plaintiffs to provide reasonable "revisions and additions" to each Defendant's proposed search terms, which clearly indicate the specific "revisions and additions" proposed by Plaintiffs, as soon as practicable. To the extent that Plaintiffs have not provided such proposals by the August 14 status conference, Defendants request that the Court require Plaintiffs to do so by August 18.

Plaintiffs' Statement: Defendants' complaint about Plaintiffs' proposed revisions and additions to their search term proposals is an attempt to unilaterally dictate the search term negotiation process in a manner that is both unnecessarily convoluted and unsupported by the ESI Protocol. Dkt. 265. Defendants primarily contend that Plaintiffs' revisions and additions are not tailored to each individual Defendant. This is belied by the fact that Plaintiffs have already agreed that each Defendant may propose Defendant-specific search strings to be run in conjunction with the global set. Thus, Defendants' stated concern is illusory. Likewise, Defendants' remaining concerns—including that Plaintiffs' proposed search terms are overbroad—are suited for resolution during the subsequent meet and confer and objection process outlined in Section V.E.3(e) of the ESI Protocol. This is precisely why the negotiation process exists. There is nothing

13

unreasonable or improper about the manner in which the parties' search term negotiations are proceeding.

In sum, the Scheduling Order called for the parties to meet and confer regarding search terms, among other discovery topics, on June 19, 2026. Plaintiffs provided a set of search terms to be used on Defendants' documents in advance of that discussion. Defendants, however, refused to provide Plaintiffs with proposed search terms or engage in meaningful discussions about search terms on the ground that it would be futile until after Defendants' served objections and responses to Plaintiffs' document requests. The parties subsequently agreed that they would exchange sets of search terms for self-application and did so on July 1, 2026. Plaintiffs provided one global set for use across each Plaintiffs' documents. Ex. 1. Defendants provided five separate sets of proposed search terms for each Defendant. Exs. 2, 3, 4, 5, 6. Upon reviewing Defendants' proposals, it was apparent that each Defendant proposed nearly identical search strings in different orders. For example, this includes universally relevant terms such as "repric!" and "reimburs!" and "oon" and "out of network."

Consistent with Section V.E.3(d) of the ESI protocol, on July 31, 2026, the parties exchanged their proposed revisions and additions. Because it was exceedingly apparent that a global set of search terms was necessary, Plaintiffs fashioned their revisions and additions to Defendants' proposed search terms as a global set, while expressly acknowledging that the need for additional individualized search strings will likely be necessary as discovery progresses. In fact, the Excel spreadsheet Plaintiffs sent to Defendants with their proposed revisions and additional includes a separate sheet for each Defendants' individualized search strings. *See* Ex. 1. Of course, Defendants are free to propose any individual, Defendant-specific search strings, and are due to serve any objections on August 31, 2026.

Lastly, Defendants' assertion that Plaintiffs' revisions and additions are improper because Defendants may use different e-discovery vendors is an issue that can be easily resolved between the parties and their vendors. That said, Plaintiffs are only aware of two Defendants that have disclosed e-discovery software to date—Elevance and United. Thus, the significance of this objection is overstated and premature. Finally, in discussions between the parties, Defendants' Counsel has stated Defendants will all be using TAR. The suggestion that this may not be the case is completely new. Plaintiffs intend to continue negotiations with Defendants over search terms. Defendants' request that Plaintiffs provide yet another set of revisions and additions is wholly improper before Defendants have even provided their objections, suggested any additional individualized search strings, or engaged in the meet and confer process contemplated in the ESI Protocol.

### E. Discovery Disputes Regarding Plaintiffs' Responses to Defendants' RFPs

Defendants' Statement: The parties continue to meet and confer regarding Plaintiffs' June 25, 2026 responses and objections to Defendants' RFPs. Various issues currently remain in dispute, including but not limited to, Plaintiffs' objections to producing materials concerning balance billing, in-network services, billed charges, financial performance, and employer-sponsored health plans. Timely resolution of these disputes is necessary for the parties to comply with the Court's May 20, 2026 scheduling order (Dkt. 222). Accordingly, Defendants respectfully request that the Court order the parties to conclude their meet-and-confer process sufficiently in advance of the next status conference in September so that any motions to compel can be briefed and heard at that conference. Defendants welcome the Court's guidance at the status conference on timing and a process for such briefing, to the extent motions practice is necessary.

Plaintiffs' Statement: This dispute is not ripe for the Court's consideration. Plaintiffs' response to Defendants' June 25, 2026 letter is pending, and has not yet been responded to.

Moreover, Plaintiffs expect that the parties will have a subsequent meet and confer regarding Defendants' objections. It is thus also premature to entertain any sort of briefing schedule regarding this dispute.

Dated: August 7, 2026                              Respectfully Submitted,

                                                   /s/ Richard M. Paul III

Jason S. Hartley (*pro hac vice*)                  Richard M. Paul III (*pro hac vice*)
Jason M. Lindner (*pro hac vice forthcoming*)      Mary Jane Fait (*pro hac vice*)
Kenneth Frost (*pro hac vice*)                     Haley Hawn (*pro hac vice*)
Maureen Forsyth (MA Bar No. 642390)                **PAUL LLP**
**HARTLEY LLP**                                    600 Broadway Boulevard, Suite 600
101 W. Broadway, Ste 820                           Kansas City, Missouri 64105
San Diego, CA 92101                                Telephone: (816) 984-8100
(619) 400-5822                                     Rick@PaulLLP.com
hartley@hartleyllp.com                             MaryJane@PaulLLP.com
lindner@hartleyllp.com                             Haley@PaulLLP.com
forsyth@hartleyllp.com
frost@hartleyllp.com

### *Co-Lead Counsel for Plaintiffs and Putative Class*

Amanda F. Lawrence                                 Patrick Coughlin, *pro hac forthcoming*
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**               Fatima Brizuela, *pro hac vice*
156 South Main Street                              **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
P.O. Box 192                                       600 West Broadway, Suite 3300
Colchester, CT 06415                               San Diego, CA 92101
Telephone: (860) 531-2606                          Telephone (619) 798-5308
alawrence@scott-scott.com                          pcoughlin@scott-scott.com
                                                   fbrizuela@scott-scott.com

Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)                     Katrina Carroll
Christian S. Ruano (352012)                        Kyle A. Shamberg
**COTCHETT, PITRE & McCARTHY, LLP**                **CARROLL SHAMBERG LLC**
840 Malcolm Road                                   111 W. Washington Street, Suite 1240
Burlingame, CA 94010                               Chicago, IL 60602
Telephone: (650) 697-600                           Telephone: (872) 215-6205
azapala@cpmlegal.com                               katrina@cdclassactions.com
ecastillo@cpmlegal.com                             kyle@csclassactions.com

16

John Landy (*pro hac vice forthcoming*)
**LANDAY ROBERTS LLP**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 648-4811
dmogin@moginlawllp.com


Daniel J. Mogin (*pro hac vice forthcoming*)
**MOGIN LAW LLP**
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone: (619) 687-6611
dmogin@moginlawllp.com


Daniel R. Karon (*pro hac vice forthcoming*)
**KARON LLC**
631 W. St. Clair Avenue
Cleveland, OH 44113
(216) 622-1851
dkaron@karonllc.com

David M. Cialkowski (*pro hac vice*)
Ian F. McFarland (*pro hac vice*)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 S. 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
david.cialkowski@zimmreed.com
ian.mcfarland@zimmreed.com


Garrett D. Blancheifl
Brand D. Penney
Roberta A. Yard
**REINHARDT WENDORF & BLANCHFIELD**
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Telephone: (651) 287-2100
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com
r.yard@rwblawfirm.com


*  *  *


Brett Boskiewicz (BBO# 646545)
**McDERMOTT WILL & SCHULTE LLP**
200 Clarendon Street
Boston, MA 02116

Telephone: (617) 535-4000
bboskiewicz@mwe.com


Joshua B. Simon (*pro hac vice*)
Warren Haskel (*pro hac vice*)
Emily T. Chen (*pro hac vice*)
Chelsea Cosillos (*pro hac vice*)

**McDERMOTT WILL & SCHULTE LLP**
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400
jsimon@mcdermottlaw.com
whaskel@mcdermottlaw.com

Alexandra Watson Bailey (BBO# 676145)
**HOGAN LOVELLS CADWALADER US LLP**
125 High Street, Suite 2010
Boston, MA 02110
Telephone: (616) 371-1024
Alexandra.Bailey@hoganlovells.com


E. Desmond Hogan (*pro hac vice*)
Justin Bernick (*pro hac vice*)
W. David Maxwell (*pro hac vice*)
**HOGAN LOVELLS CADWALADER US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
david.maxwell@hoganlovells.com

17

echen@mcdermottlaw.com

*Attorneys for Defendant The Cigna Group*

Benjamin E. Waldin
Vanessa G. Jacobson
Scott C. Solberg
**EIMERSTAHL LLP**
224 South Michigan Avenue
Chicago, IL 60604
Telephone: (312) 660-7631
bwaldin@EimerStahl.com

David B. Schwartz (*pro hac vice*)
Z. Lilly Rudy (*pro hac vice*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1155 F. Street NW, Suite 700
Washington, DC 20004
Telephone: (202) 508-6086
david.schwartz@bclplaw.com
lily.rudy@bclplaw.com

Justin P. O'Brien
**LOVETT O'BRIEN LLP**
155 Federal Street, Suite 1300
Boston, MA 02110
Telephone: (617) 371-1035
jobrien@lovettobrien.com

Justin Kingsolver
**BRYAN CAVE LEIGHTON PAISNER LLP**
Two North Central Avenue, Suite 2100
Phoenix, AZ 85004
Telephone: (602) 364-7036
Justin.kingsolver@bclplaw.com

*Attorneys for Defendant Humana Inc.*

Matthew L. McGinnis
Jane E. Willis
Sandra H. Masselink
**ROPES & GRAY LLP**
800 Boylston Street

*Attorneys for Defendant Elevance Health, Inc.*

Joseph A. Gorman (*pro hac vice*)
Rachel S. Brass (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8293
rbrass@gibsondunn.com
jgorman@gibsondunn.com

Heather L. Richardson (pro hac vice)
Christopher D. Dusseault (pro hac vice)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue, 54th Floor
Los Angeles, CA 90071
Telephone: (213) 229-7409
hrichardson@gibsondunn.com

Joshua Lipton (pro hac vice)
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, DC 20036
Telephone: (202) 955-8500
jlipton@gibsondunn.com

Allison O'Neil (BBO# 641330)
Kara Kelleher (BBO# 713274)
**TROUTMAN PEPPER LOCKE**
111 Huntington Avenue, 9th Floor
Boston, MA 02199
Telephone: (617) 443-3744
Allison.Oneil@troutman.com
Kara.Kelleher@troutman.com
*Attorneys for UnitedHealth Group, Inc.*

George Borden
Katherine Anne Trefz (*pro hac vice*)
Jonathan Pitt (*pro hac vice*)
Thomas Ryan (*pro hac vice*)
Suzanne Salgado (*pro hac vice*)

18

Boston, MA 02199
Telephone: (617) 951-7000
Matthew.McGinnis@ropesgray.com
Jane.Willis@ropesgray.com
Sandra.Masselink@ropsegray.com

Casey Kyung-Se Lee (*pro hac vice*)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
(212) 596-9799
casey.lee@ropesgray.com
*Attorneys for Defendants Zelis Healthcare, LLC*
*Zelis Claims Integrity, LLC and*
*Zelis Network Solutions, LLC*

**WILLIAMS & CONNOLLY LLP**
680 Main Avenue SW
Washington, DC 20025
Telephone: (202) 403-5038
gborden@wc.com
ktrefz@wc.com
jpitt@wc.com
tryan@wc.com
*Attorneys for Defendant Aetna, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of August 2026, I caused a copy of the foregoing to be served, via ECF, on all counsel of record.

*/s/ Richard M. Paul III*